DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
By: DANIELLE J. LEVINE
Assistant United States Attorney
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2689
E-mail: danielle.levine@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br>                 Plaintiff, <br><br>      -v- <br><br> HANNA HENDLER, *as Administrator of the Estate of David Benishai and as a distributee of the Estate of David Benishai*; DANIELLE BENISHAI, *as a distributee of the Estate of David Benishai*; and DOES 1-100, <br><br>                 Defendants. | No. 23 Civ. 3280 <br><br> **COMPLAINT** |

      Plaintiff the United States of America (the "United States"), by its attorney, Damian Williams, United States Attorney for the Southern District of New York, brings this civil action against Defendants Hanna Hendler, as Administrator of the Estate of David Benishai (the "Estate") and as a distributee of the Estate; Danielle Benishai, as a distributee of the Estate; and any other unknown distributees of the Estate, to collect the unpaid civil penalties assessed against taxpayer David Benishai ("Benishai"), who is now deceased, for his failure to report his financial interest in foreign bank accounts, as required under the Bank Secrecy Act ("BSA"), 31 U.S.C. § 5311 *et seq.*, and its implementing regulations, in calendar years 2004, 2005, 2006, 2007, 2008, 2009, and 2010; and to collect amounts that have accrued since the assessments. The United States alleges as follows:

**JURISDICTION AND VENUE**

1.      The United States brings this suit under 31 U.S.C. §§ 3711(g)(4)(C) and

5321(b)(2), at the direction of the Attorney General of the United States and at the request of,

and with the authorization of, the Commissioner of the Internal Revenue Service ("IRS"), a

delegate of the Secretary of the Treasury of the United States.

2.      This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331, 1345, and 1355, because it arises under a federal statute and the United States is

the plaintiff.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b) because the last known

address of the Estate is in this district and a substantial part of property that is the subject of the

action is located in this district.

**REGULATORY BACKGROUND**

4.      The Secretary of the Treasury is authorized by statute to require United States

persons to report certain transactions with foreign financial agencies. 31 U.S.C. § 5314. Under

that statute's implementing regulations, "[e]ach person subject to the jurisdiction of the United

States . . . having a financial interest in, or signature or other authority over, a bank, securities or

other financial account in a foreign country," was required to report that interest for each

calendar year in which such relationship existed. 31 C.F.R. § 103.24(a) (for 2004-2009 reporting

years); *see also* 31 C.F.R. § 1010.350(a) (for 2010 reporting year).[1]

5.      To fulfill this requirement during the years at issue, a person was required to file a

Form TD F 90-22.1, "Report of Foreign Bank and Financial Accounts," commonly known as an

---

[1] The regulations implementing 31 U.S.C. § 5314 were amended during the relevant time period.
The amended regulations, which were moved to 31 C.F.R. pt. 1010, went effective on February
28, 2011.

"FBAR." 31 C.F.R. § 103.24(a) (for 2004-2009 reporting years); 31 C.F.R. § 1010.350(a) (for 2010 reporting year). At the time of the violations alleged in this complaint, an FBAR was due by "June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." 31 C.F.R. § 103.27(c) (for 2004-2009 reporting years); 31 C.F.R. § 1010.306(c) (for 2010 reporting year).

6.      Any person who fails to report his or her interest in a foreign account, as provided by the Secretary, may be subject to a civil penalty assessed by the Department of the Treasury. For violations involving the non-willful failure to report the existence of a foreign account, the maximum civil penalty that may be imposed for each violation for failure to file an FBAR is $10,000, which accrues on a per-report, rather than a per-account, basis. 31 U.S.C. § 5321(a)(5); *see Bittner v. United States*, 143 S. Ct. 713 (2023).

7.      Penalties assessed under 31 U.S.C. § 5321(a)(5)(B) are subject to interest and further penalties, pursuant to 31 U.S.C. § 3717.

## FACTUAL BACKGROUND

8.      Benishai became a U.S. citizen in the 1960s. Upon information and belief, between 2004 and 2010, Benishai lived at 252 W. 76th Street, New York, New York.

9.      Benishai died intestate on January 6, 2021.

10.     Upon information and belief, Benishai was survived by his wife, Hanna Hendler ("Hendler"), and his daughter, Danielle Benishai ("Ms. Benishai").

11.     Hendler was appointed the administrator of the Estate by the Surrogate's Court of the County of New York through letters of administration issued on July 29, 2021.

12.     Upon information and belief, Benishai's assets were distributed according to the intestacy rules for the State of New York.

13.     According to the intestacy rules for the State of New York, if a decedent is survived by a "spouse and issue," "fifty thousand dollars and one-half of the residue [are distributed] to the spouse, and the balance thereof to the issue by representation." N.Y. Est. Pow. & Trusts L. § 4-1.1(a)(1) (2012).

14.     Defendants Does 1-100 are any additional descendants of Benishai or distributees of the Estate who are currently unknown to the United States.

15.     The last known address for the administrator of the Estate is an office located at 6 East 46th Street, Room 504, New York, New York 10017.

**A.  Benishai's Businesses**

16.     Benishai was the owner and operator of Magic Tours and Travel LLC ("Magic Tours"), which was created in January 2002. Benishai owned 99% of Magic Tours and Hendler owned the remaining 1%. Benishai was the sole operator and manager, and he had signature authority over the company's bank accounts.

17.     Benishai and Magic Tours became involved with two Israeli businessmen, Zvi Goldberg and Emanuel Lalu, and their company, Andal Aviation. At some point, Benishai was given signature authority over Andal Aviation's bank accounts because Goldberg's and Lalu's advanced age and poor health prevented them from performing their duties.

18.     Benishai, Goldberg, and Lalu also created an Israeli company, Magic Tours and Aviation ("MT&A"). MT&A was 99% owned by Paragon Finance, a British Virgin Islands company, and 1% owned by Ms. Benishai, Benishai's daughter. Upon information and belief, although Benishai did not have direct ownership interest in MT&A, he had signature authority over the company's bank accounts at Bank Hapoalim in Israel.

**B.  The Bank Accounts**

19.     Benishai had a financial interest in and/or signature authority over nine foreign accounts located in Israel during the years at issue, calendar years 2004 through 2010. Those bank accounts include: (a) three personal bank accounts at Bank Hapoalim ("Hapoalim"), the first denominated in U.S. dollars (the "7584 Hapoalim Dollar Account # 1"), the second denominated in U.S. dollars (the "7584 Hapoalim Dollar Account # 2"), and the third in Israeli shekels (the "7584 Hapoalim Shekel Account") with account number XX7584 (together, the "7584 Hapoalim Accounts");[2] (b) four bank accounts denominated in U.S. dollars at First International Bank of Israel ("FIBI") in the name of Andal Aviation, over which Benishai had signature authority, with account numbers 409-XXXXX6 (the "409 FIBI Account"),[3] 201-XXXXX6 (the "201 FIBI Account"), 185-XXXX6 (the "185 FIBI Account"), and 106-XXXXX6 (the "106 FIBI Account," and together, the "FIBI Accounts"); and (c) two bank accounts at Hapoalim in the name of MT&A, for which Benishai had signature authority, one denominated in U.S. dollars (the "2480 Hapoalim Dollar Account") and the other in Israeli shekels (the "2480 Hapoalim Shekel Account"), with account number XX2480 (together, the "2480 Hapoalim Accounts").[4]

20.     The 7584 Hapoalim Accounts were bank, securities, or other financial accounts in a foreign country.

21.     The FIBI Accounts were bank, securities, or other financial accounts in a foreign country.

---

[2] The 7584 Hapoalim Accounts comprise three accounts under the same account number.

[3] The FIBI Accounts have the same last six numbers, but they differ in their first three numbers.

[4] The 2480 Hapoalim Accounts comprise two accounts under the same account number.

22.     The 2480 Hapoalim Accounts were bank, securities, or other financial accounts in a foreign country.

       i.     **Calendar Year 2004**

23.     In calendar year 2004, Benishai had a financial interest in the 7584 Hapoalim Accounts.

24.     The maximum balance of the 7584 Hapoalim Dollar Account # 1 was $10,000, the maximum balance for 7584 Hapoalim Dollar Account # 2 was $59.72, and the maximum balance for the 7584 Hapoalim Shekel Account was the equivalent of $463.

25.     The aggregate balance of the 7584 Hapoalim Accounts in calendar year 2004 was greater than $10,000.

26.     The due date for filing an FBAR for calendar year 2004 was June 30, 2005.

27.     Benishai failed to file an FBAR to report his interest in the 7584 Hapoalim Accounts for calendar year 2004 by the June 30, 2005, deadline. Accordingly, Benishai failed to timely disclose the 7584 Hapoalim Accounts for calendar year 2004, as required by 31 U.S.C. § 5314.

       ii.     **Calendar Year 2005**

28.     In calendar year 2005, Benishai had a financial interest in the 7584 Hapoalim Accounts.

29.     The maximum balance of the 7584 Hapoalim Dollar Account # 1 was $10,069, the maximum balance for 7584 Hapoalim Dollar Account # 2 was $20.95, and the maximum balance for the 7584 Hapoalim Shekel Account was the equivalent of $902.

30.     In calendar year 2005, Benishai also had signature authority over the 185 FIBI Account.

31.     The maximum balance of the 185 FIBI Account was approximately $4,523.

32.     The aggregate balance of the 7584 Hapoalim Accounts and the 185 FIBI Account in calendar year 2005 was greater than $10,000.

33.     The due date for filing an FBAR for calendar year 2005 was June 30, 2006.

34.     Benishai failed to file an FBAR to report his interest in the 7584 Hapoalim Accounts and the 185 FIBI Account for calendar year 2005 by the June 30, 2006, deadline. Accordingly, Benishai failed to timely disclose the 7584 Hapoalim Accounts and the 185 FIBI Account for calendar year 2005, as required by 31 U.S.C. § 5314.

   **iii. Calendar Year 2006**

35.     In calendar year 2006, Benishai had a financial interest in the 7584 Hapoalim Accounts.

36.     The maximum balance of the 7584 Hapoalim Dollar Account # 1 was $10,292, the maximum balance for 7584 Hapoalim Dollar Account # 2 was $6,000, and the maximum balance of the 7584 Hapoalim Shekel Account was the equivalent of $0.

37.     The aggregate balance of the 7584 Hapoalim Accounts in calendar year 2006 was greater than $10,000.

38.     The due date for filing an FBAR for calendar year 2006 was June 30, 2007.

39.     Benishai failed to file an FBAR to report his interest in the 7584 Hapoalim Accounts for calendar year 2006 by the June 30, 2007, deadline. Accordingly, Benishai failed to timely disclose the 7584 Hapoalim Accounts for calendar year 2006, as required by 31 U.S.C. § 5314.

### iv.     Calendar Year 2007

40.     In calendar year 2007, Benishai had a financial interest in the 7584 Hapoalim Accounts.

41.     The maximum balance of the 7584 Hapoalim Dollar Account # 1 was $0, the maximum balance for 7584 Hapoalim Dollar Account # 2 was $0, and the maximum balance for the 7584 Hapoalim Shekel Account was the equivalent of $63,813.

42.     The due date for filing an FBAR for calendar year 2007 was June 30, 2008.

43.     Benishai failed to file an FBAR to report his interest in the 7584 Hapoalim Accounts for calendar year 2007 by the June 30, 2008, deadline. Accordingly, Benishai failed to timely disclose the 7584 Hapoalim Accounts for calendar year 2007, as required by 31 U.S.C. § 5314.

### v.     Calendar Year 2008

44.     In calendar year 2008, Benishai had a financial interest in the 7584 Hapoalim Accounts.

45.     The maximum balance of the 7584 Hapoalim Dollar Account # 1 was $0, the maximum balance for 7584 Hapoalim Dollar Account # 2 was $0, and the maximum balance of the 7584 Hapoalim Shekel Account was the equivalent of $4,986.

46.     In calendar year 2008, Benishai also had signature authority for the 185 FIBI Account, the 409 FIBI Account, and the 106 FIBI Account.

47.     The maximum balance of the 185 FIBI Account was $53,404, the maximum balance for the 409 FIBI Account was $13,672, and the maximum balance for the 106 FIBI Account was $21,196.

48.     In calendar year 2008, Benishai also had signature authority for the 2480 Hapoalim Accounts.

49.     The maximum balance for the 2480 Hapoalim Dollar Account was $44,865, and the maximum balance for the 2480 Hapoalim Shekel Account was the equivalent of $15,168.

50.     The aggregate balance of the 7584 Hapoalim Accounts, the 185 FIBI Account, the 409 FIBI Account, the 106 FIBI Account, and the 2480 Hapoalim Accounts in calendar year 2008 was greater than $10,000.

51.     The due date for filing an FBAR for calendar year 2008 was June 30, 2009.

52.     Benishai failed to file an FBAR to report his interest in the 7584 Hapoalim Accounts, the 185 FIBI Account, the 409 FIBI Account, the 106 FIBI Account, and the 2480 Hapoalim Accounts for calendar year 2008 by the June 30, 2009, deadline. Accordingly, Benishai failed to timely disclose the 7584 Hapoalim Accounts, the 185 FIBI Account, the 409 FIBI Account, the 106 FIBI Account, and the 2480 Hapoalim Accounts for calendar year 2008, as required by 31 U.S.C. § 5314.

**vi.     Calendar Year 2009**

53.     In calendar year 2009, Benishai had a financial interest in the 7584 Hapoalim Accounts.

54.     The maximum balance for the 7584 Hapoalim Dollar Account # 1 was $0, the maximum balance of the 7584 Hapoalim Dollar Account # 2 was $2,400, and the maximum balance for the 7584 Hapoalim Shekel Account was the equivalent of $4,945.

55.     In calendar year 2009, Benishai also had signature authority for the 185 FIBI Account, the 409 FIBI Account, and the 106 FIBI Account.

56.     The maximum balance of the 185 FIBI Account was $30,321, the maximum balance for the 409 FIBI account was $3,992, and the maximum balance for the 106 FIBI Account was $2,400.

57.     In calendar year 2009, Benishai also had signature authority for the 2480 Hapoalim Accounts.

58.     The maximum balance for the 2480 Hapoalim Dollar Account was $291,836, and the maximum balance for the 2480 Hapoalim Shekel Account was the equivalent of $37,164.

59.     The aggregate balance of the 7584 Hapoalim Accounts, the 185 FIBI Account, the 409 FIBI Account, the 106 FIBI Account, and the 2480 Hapoalim Accounts in calendar year 2009 was greater than $10,000.

60.     The due date for filing an FBAR for calendar year 2009 was June 30, 2010.

61.     Benishai failed to file an FBAR to report his interest in the 7584 Hapoalim Accounts, the 185 FIBI Account, the 409 FIBI Account, the 106 FIBI Account, and the 2480 Hapoalim Accounts for calendar year 2009 by the June 30, 2010, deadline. Accordingly, Benishai failed to timely disclose 7584 Hapoalim Accounts, the 185 FIBI Account, the 409 FIBI Account, the 106 FIBI Account, and the 2480 Hapoalim Accounts for calendar year 2009, as required by 31 U.S.C. § 5314.

**vii.    Calendar Year 2010**

62.     In calendar year 2010, Benishai had a financial interest in the 7584 Hapoalim Accounts.

63.     The maximum balance for the 7584 Hapoalim Dollar Account # 1 was $0, the maximum balance of the 7584 Hapoalim Dollar Account # 2 was $2,290, and the maximum balance for the 7584 Hapoalim Shekel Account was the equivalent of $35,598.

64.     In calendar year 2010, Benishai also had signature authority for the 409 FIBI Account and the 106 FIBI Account.

65.     The maximum balance of the 409 FIBI account was $2,517, and the maximum balance for the 106 FIBI Account was $109,055.

66.     In calendar year 2010, Benishai also had signature authority for the 2480 Hapoalim Accounts.

67.     The maximum balance for the 2480 Hapoalim Dollar Account was $452,001, and the maximum balance for the 2480 Hapoalim Shekel Account was the equivalent of $50,685.

68.     The aggregate balance for the 7584 Hapoalim Accounts, the 409 FIBI Account, the 106 FIBI Account, and the 2480 Hapoalim Accounts in calendar year 2010 was greater than $10,000.

69.     The due date for filing an FBAR for calendar year 2010 was June 30, 2011.

70.     Benishai failed to file an FBAR to report his interest in the 7584 Hapoalim Accounts, the 409 FIBI Account, the 106 FIBI Account, and the 2480 Hapoalim Accounts for calendar year 2010 by the June 30, 2010, deadline. Accordingly, Benishai failed to timely disclose the 7584 Hapoalim Accounts, the 409 FIBI Account, the 106 FIBI Account, and the 2480 Hapoalim Accounts for calendar year 2010, as required by 31 U.S.C. § 5314.

## C.  Examination and Assessment of Civil Penalties

71.     On September 9, 2011, Benishai submitted a voluntary disclosure pursuant to the terms of the IRS's Offshore Voluntary Disclosure Program ("OVDP"). *See generally* Internal Revenue Manual Part 4.63.3.

72.     As part of Benishai's participation in the OVDP, he filed a belated 2002 income tax return on November 13, 2013, and belated income tax returns for years 2003 through 2010 on

November 15, 2013. These returns were prepared by Eran Varnai, a Certified Public Accountant, employed by Janus Associates, an accounting firm.

73.     Benishai's belatedly filed returns did not include Schedule B to Form 1040, which requires the taxpayer to indicate whether he has "a financial interest in or signature authority over a financial account (such as a bank account, securities account, or brokerage account) located in a foreign country."

74.     On March 18, 2015, as part of the requirements of Benishai's participation in the OVDP, Benishai untimely filed FBARs for calendar years 2004 through 2010.

75.     On August 4, 2015, Benishai opted out of the OVDP. The opt-out was approved by the IRS on August 21, 2015.

76.     Due to Benishai's decision to opt out of the OVDP, the IRS commenced an FBAR examination of Benishai on October 19, 2015.

77.     On February 12, 2016, as part of the examination, an IRS revenue agent interviewed Benishai and Hendler. Further, an IRS revenue agent interviewed Varnai on May 18, 2016.

78.     During the May 2016 interview, Varnai represented to the IRS revenue agent that, as part of preparing Benishai's original tax returns for years 2002 through 2010, he had asked Benishai whether he or any of his foreign companies had any bank accounts outside the United States during the years in question. However, Varnai declined to disclose Benishai's answer to his question until after he conferred with Benishai. Shortly after the interview, Varnai contacted the IRS revenue agent and stated that Benishai had told Varnai that he did not have any foreign accounts with a balance of over $10,000.

79.   Upon conclusion of the interviews, Benishai stopped cooperating and refused to provide to the IRS the books and records necessary to complete the examination.

80.   On September 17, 2018, the IRS notified Benishai by letter that it proposed to assess penalties totaling $250,000 (the "Proposed FBAR Penalties")—$10,000 per unreported account per year—against him for his failure to comply with FBAR filing requirements for calendar years 2004 through 2010.

81.   The Proposed FBAR Penalties were as follows:

| Account | Penalty |
|---|---|
| **2004** | |
| 7584 Hapoalim Dollar Account # 1 | $10,000 |
| **2005** | |
| 7584 Hapoalim Dollar Account # 1 | $10,000 |
| 185 FIBI Account | $10,000 |
| **2006** | |
| 7584 Hapoalim Dollar Account # 1 | $10,000 |
| 7584 Hapoalim Dollar Account # 2 | $10,000 |
| **2007** | |
| 7584 Hapoalim Shekel Account | $10,000 |
| **2008** | |
| 7584 Hapoalim Shekel Account | $10,000 |
| 185 FIBI Account | $10,000 |
| 409 FIBI Account | $10,000 |
| 106 FIBI Account | $10,000 |
| 2480 Hapoalim Dollar Account | $10,000 |
| 2480 Hapoalim Shekel Account | $10,000 |
| **2009** | |
| 7584 Hapoalim Dollar Account # 2 | $10,000 |
| 7584 Hapoalim Shekel Account | $10,000 |
| 185 FIBI Account | $10,000 |
| 409 FIBI Account | $10,000 |
| 106 FIBI Account | $10,000 |
| 2480 Hapoalim Dollar Account | $10,000 |
| 2480 Hapoalim Shekel Account | $10,000 |
| **2010** | |
| 7584 Hapoalim Dollar Account # 2 | $10,000 |
| 7584 Hapoalim Shekel Account | $10,000 |
| 409 FIBI Account | $10,000 |
| 106 FIBI Account | $10,000 |

| Account | Penalty |
|---|---|
| 2480 Hapoalim Dollar Account | $10,000 |
| 2480 Hapoalim Shekel Account | $10,000 |
| **Total** | **$250,000** |

82.     On October 24, 2018, Benishai's authorized representative filed a protest with the IRS, requesting an administrative hearing with the IRS's Office of Appeals.

83.     Following two Office of Appeals hearings on May 20 and July 29, 2020, the Appeals Officer sustained the Proposed FBAR Penalties in full.

84.     The statute of limitations for assessing an FBAR penalty is six years from the date of violation, which is the date the FBAR was required to be filed. 31 U.S.C. §5321(b)(1). With respect to the years at issue, the FBAR had to be filed on or before June 30 of the calendar year following the year for which the report is made. 31 C.F.R. § 103.27(c) (for 2004-2009 reporting years); 31 C.F.R. § 1010.306(c) (for 2010 reporting year). The FBAR penalties for the calendar years at issue, 2004 through 2010, were timely assessed because, between August 2014 and October 2020, Benishai or his authorized representatives agreed in writing to extend the time within which the Secretary of the Treasury may assess FBAR penalties against Benishai, ultimately extending the assessment deadlines until June 30, 2021:

   a)   On August 4, 2014, Benishai consented to extend the statute of limitations for assessing the FBAR penalties for calendar years 2004 through 2010 to December 31, 2016;

   b)   On June 30, 2015, Benishai consented to extend the statute of limitations for assessing the FBAR penalties for calendar years 2004 through 2010 to December 31, 2017;

c)  On March 21, 2017, Benishai consented to extend the statute of limitations for assessing the FBAR penalties for calendar years 2004 through 2010 to December 31, 2018;

d)  On October 16, 2018, Stephen La Barbera, as Benishai's power of attorney, consented to extend the statute of limitations for assessing the FBAR penalties for calendar years 2004 through 2010 to December 31, 2019;

e)  On June 27, 2019, Benishai consented to extend the statute of limitations for assessing the FBAR penalties for calendar years 2004 through 2010 to December 31, 2020; and

f)  On October 30, 2020, Ronald J. Cohen, as Benishai's power of attorney, consented to extend the statute of limitations for assessing the FBAR penalties for calendar years 2004 through 2010 to June 30, 2021.

85.  As stated above, on January 6, 2021, Benishai died intestate, and the IRS was notified of his death shortly thereafter.

86.  On April 21, 2021, the IRS assessed the Proposed FBAR Penalties.

87.  On April 27, 2021, the IRS sent a letter to the last known address of the Estate, informing it that the Proposed FBAR Penalties had been assessed on April 21, 2021, and that payment was required within 30 days of the assessment date. On May 26, 2021, the letter was returned to the IRS as undeliverable.

88.  Since that assessment, on February 28, 2023, the U.S. Supreme Court decided *Bittner v. United States*, 143 S. Ct. 713, which held that the maximum penalty for non-willful failure to file an FBAR is $10,000 per unfiled or incomplete report, not $10,000 for each unreported account. Accordingly, the United States is only seeking a portion of the penalties

originally assessed by the IRS—namely, $70,000, or $10,000 for each of the seven years at issue, plus interest and penalties for late payment under U.S.C. § 3717(a)-(e).

89.     Separately, in or around October 2015, the IRS commenced an income tax examination of Benishai and Hendler for tax years 2003 through 2010. During this examination, the IRS discovered significant unreported income, totaling more than $1,000,000 in deficiencies, and assessed civil fraud penalties of more than $500,000 pursuant to 26 U.S.C. § 6663. A statutory notice of deficiency was issued to the Estate and Hendler for tax years 2008 through 2010. Hendler petitioned the Tax Court on September 13, 2021, to challenge it. That petition remains pending before the Tax Court.

## CLAIMS FOR RELIEF

### Count I: Judgment for Civil Penalties, 31 U.S.C. § 5321(a)(5)
### (Against Defendant Hanna Hendler, as Administrator of the Estate of David Benishai)

90.     The United States repeats and realleges the allegations in paragraphs 1 through 89 with the same force and effect as if set forth fully herein.

91.     Hendler, as the Administrator of the Estate, owes the United States FBAR penalties totaling $70,000, plus $8,296.44 in associated penalties and $1,382.74 in accrued interest pursuant to 31 U.S.C. § 3717 which had accrued as of April 17, 2023, which continue to accrue, less any amounts collected.

92.     The United States may bring suit to recover the FBAR penalties assessed under 31 U.S.C. § 5321(a) at any time before the end of the two-year period beginning on the date the FBAR penalties were assessed. *See* 31 U.S.C. § 5321(b)(2)(A). This action is brought within the two-year limitations period.

**Count II: Liability Under N.Y. Est. Powers & Trusts Law § 12-1.1**
**(Against Defendants Hanna Hendler, Danielle Benishai, and Does 1-100, as Distributees of the Estate of David Benishai)**

93.     The United States repeats and realleges the allegations in paragraphs 1 through 92 with the same force and effect as if set forth fully herein.

94.     To the extent the United States cannot fully satisfy its claim because there is insufficient Estate property remaining in the hands of Hendler as the Administrator of the Estate to satisfy the United States' claim, all distributees of the Estate are liable pursuant to New York state law, *see* N.Y. Estate Powers & Trusts Law § 12-1.1,[5] for the Estate's FBAR liabilities to the extent of the value of any property they received in that capacity.

**RELIEF REQUESTED**

WHEREFORE, Plaintiff the United States of America respectfully requests that the Court:

(a)     Enter judgment against defendant Hendler, as the Administrator of the Estate, and in favor of the United States in the amount of $70,000 for penalties assessed under 31 U.S.C. § 5321(a)(5), plus accrued interest on such penalties, late payment penalties, associated fees, and further interest and statutory additions thereon as allowed by law;

(b)     To the extent the United States cannot fully satisfy its claim because there is insufficient Estate property remaining in the hands of Hendler as the Administrator of the Estate to satisfy the United States' claim, enter judgment against defendants Hendler, Danielle Benishai, and Does 1-100, as distributees of the Estate for the Estate's FBAR liabilities to the

---

[5] Pursuant to N.Y. Estate Powers & Trusts Law § 12-1.1(a), "distributees and testamentary beneficiaries are liable, in an action, to the extent of the value of any property received by them as such, for the debts and reasonable funeral expenses of a decedent, the expenses of administering his estate and all taxes for which the estate is liable, which have not previously been recovered from the personal representative or from any other source described in [§ 12-1.1(b)]."

extent of the value of any property they received in that capacity; and

       (c)     Grant the United States its costs incurred in connection with this action, along

with such further relief as the Court may deem just and proper.

Dated:     April 19, 2023
           New York, New York

                            DAMIAN WILLIAMS
                            United States Attorney for the
                            Southern District of New York

               By:       */s/ Danielle J. Levine*
                            DANIELLE J. LEVINE
                            Assistant United States Attorney
                            86 Chambers Street, 3rd Floor
                            New York, New York 10007
                            Tel.: (212) 637-2689
                            E-mail: danielle.levine@usdoj.gov