## IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

*Plaintiff,*

v.

HANNA HENDLER, *as Administrator of the Estate of David Benishai and as a distributee of the Estate of David Benishai;* DANIELLE BENISHAI, *as a distributee of the Estate of David Benishai*; and DOES 1-100,

*Defendants.*

Case No. 23-cv-3280 (DEH)

---

## [PROPOSED] BRIEF OF THE INSTITUTE FOR JUSTICE AS AMICUS CURIAE IN SUPPORT OF NEITHER PARTY

---

William R. Aronin (SDNY Bar No. WA0685)
Samuel B. Gedge*
Michael N. Greenberg*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Telephone: 703.682.9320
Facsimile: 703.682.9321
E-mail: waronin@ij.org
        sgedge@ij.org
        mgreenberg@ij.org

* *Pro hac vice* motion filed concurrently

## TABLE OF CONTENTS

Interest of amicus curiae ......................................................................................................1

Introduction ...........................................................................................................................1

Discussion ...............................................................................................................................3

      A.     The Excessive Fines Clause applies to civil FBAR penalties ...................................3

          1.     The Excessive Fines Clause applies to civil monetary sanctions that are at least partly punitive ...........................................................................3

          2.     Because civil FBAR penalties are at least partly punitive, the Excessive Fines Clause applies.....................................................................5

          3.     The contrary arguments lack merit...........................................................7

               a.     FBAR penalties are not solely "remedial." ...................................7

               b.     The standard for determining whether a penalty is "criminal" under the Fifth and Sixth Amendments differs from the standard for determining whether it is partly punitive under the Eighth Amendment ...................................................................... 11

               c.     Applying the Excessive Fines Clause to monetary sanctions like civil FBAR penalties does not imperil the government's ability to impose civil penalties in general .................................................14

          4.     Lower-court decisions that have held the Excessive Fines Clause inapplicable to FBAR penalties are unsound .............................................14

      B.     The scope of the Excessive Fines Clause is an important issue that merits the Court's attention...................................................................................................... 17

Conclusion ....................................................................................................................... 22

# TABLE OF AUTHORITIES

**Case**                                                          **Page(s)**

*Austin v. United States,*
509 U.S. 602 (1993) ........................................................ 2, 3, 4, 5, 6, 7, 8, 11, 12, 13, 15, 16

*Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.,*
492 U.S. 257 (1989) ....................................................................................................... 21

*Colo. Dep't of Lab. & Emp. v. Dami Hosp., LLC,*
442 P.3d 94 (Colo. 2019),
*cert. denied,* 140 S. Ct. 849, 900 (2020) .......................................................................... 5

*Dorce v. City of New York,*
608 F. Supp. 3d 118 (S.D.N.Y. 2022) .......................................................................... 9, 15

*Farina v. Metropolitan Transp. Auth.,*
409 F. Supp. 3d 173 (S.D.N.Y. 2019) .............................................................................. 4

*Hudson v. United States,*
522 U.S. 93 (1997) ............................................................................ 3, 7, 12, 13, 14, 16

*Kennedy v. Mendoza-Martinez,*
372 U.S. 144 (1963) ...................................................................................................... 12

*Kokesh v. SEC,*
581 U.S. 455 (2017) ........................................................................................................ 9

*Landa v. United States,*
153 Fed. Cl. 585 (2021) ........................................................................................... 15, 18

*New York v. United Parcel Serv., Inc.,*
942 F.3d 554 (2d Cir. 2019),
*cert. denied,* 141 S. Ct. 242 (2020 ................................................................................... 5

*People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.,*
124 P.3d 408 (Cal. 2005) ................................................................................................ 5

*Pimentel v. City of Los Angeles,*
974 F.3d 917 (9th Cir. 2020) ....................................................................................... 4-5

*State v. Timbs,*
134 N.E.3d 12 (Ind. 2019) ............................................................................................ 22

*Timbs v. Indiana,*
139 S. Ct. 682 (2019) ........................................................................... 1, 2-3, 17, 18, 22

*Toth v. United States,*
143 S. Ct. 552 (2023) ........................................................... 1, 2, 5, 8, 11, 15, 16, 17, 18

*Towers v. City of Chicago*,
  173 F.3d 619 (7th Cir. 1999) ..................................................................... 5, 9

*Tyler v. Hennepin County*,
  598 U.S. 631 (2023) ....................................................................... 2, 5, 8, 11

*United States v. Bajakajian*,
  524 U.S. 321 (1998) ............................................................... 5, 8, 9, 10, 11

*United States v. Burke*,
  504 U.S. 229 (1992) .................................................................................... 17

*United States v. Collins*,
  No. 18-cv-1069, 2021 WL 456962 (W.D. Pa. Feb. 8, 2021),
  *aff'd*, 36 F.4th 487 (3d Cir. 2022) .......................................................... 15

*United States v. Estate of Schoenfeld*,
  344 F. Supp. 3d 1354 (M.D. Fla. 2018) .................................................. 12

*United States v. Gaynor*,
  No. 21-cv-382, 2023 WL 5749278 (M.D. Fla. Sept. 6, 2023) .............. 12

*United States v. Halper*,
  490 U.S. 435 (1989) ...................................................................................... 7

*United States v. Reyes*,
  No. 21-cv-5578, 2024 WL 437096 (E.D.N.Y. Jan. 10, 2024) ................ 6

*United States v. Schik*,
  No. 20-cv-2211 (MKV), 2022 WL 685415 (S.D.N.Y. Mar. 8, 2022) .......... 18

*United States v. Schwarzbaum*,
  No. 18-cv-81147, 2020 WL 2526500 (S.D. Fla. May 18, 2020),
  *vacated*, 24 F.4th 1355 (11th Cir. 2022) ............................................. 16

*United States v. Toth*,
  33 F.4th 1 (1st Cir. 2022) ...................................................................16, 17

*United States v. Ursery*,
  518 U.S. 267 (1996) ..................................................... 10, 13, 14, 16

*United States v. Viloski*,
  814 F.3d 104 (2d Cir. 2016) .................................................................9, 22

*United States v. Ward*,
  448 U.S. 242 (1980) .................................................................................... 12

*United States v. Warner*,
  792 F.3d 847 (7th Cir. 2015) ...................................................................... 2

*Yates v. Pinellas Hematology & Oncology, P.A.*,
21 F.4th 1288 (11th Cir. 2021) ............................................................................... 4, 9

**Statutes**

21 U.S.C. § 881(a)(4)(C) (1988 & 1991) ........................................................................ 4, 6

Bank Secrecy Act, 31 U.S.C. § 5311 *et seq.*:

31 U.S.C. § 5316(a)(1)(A) ......................................................................................... 9
31 U.S.C. § 5321(a)(5)(B)(i) ..................................................................................... 6
31 U.S.C. § 5321(a)(5)(B)(ii) .................................................................................... 6
31 U.S.C. § 5321(a)(5)(C) ......................................................................................... 6

**Other Authorities**

Alexes Harris, *A Pound of Flesh: Monetary Sanctions as Punishment for the Poor* (2016) .............. 3, 17

Am. Compl., *United States v. Bhasin*,
No. 23-cv-1470 (E.D.N.Y. Mar. 16, 2023) (Doc. 6) ...................................................... 19

Beth A. Colgan & Nicholas M. McLean, *Financial Hardship and the Excessive Fines Clause:
Assessing the Severity of Property Forfeitures After* Timbs, 129 Yale L.J. Forum 430 (2020) ....... 22

Black's Law Dictionary (6th ed. 1990) ....................................................................... 8

Default Judgment, *United States v. Bhasin*,
No. 23-cv-1470 (E.D.N.Y. Feb. 7, 2024) (Doc. 28) ...................................................... 19

Dep't of the Treasury, *2020 Report of Foreign Bank and Financial Accounts (FBAR) Report to
Congress*, https://tinyurl.com/IRS-FBAR-Report ......................................................... 21

Kenneth Mann, *Punitive Civil Sanctions: The Middleground Between Criminal and Civil Law*,
101 Yale L.J. 1795 (1992) ...................................................................................... 13

Mem. Supp. U.S. Mot. for Summ. J., *United States v. Simonelli*,
No. 6-cv-653 (D. Conn. Jan. 29, 2008) (Doc. 20-2) ....................................... 7, 9, 11, 21

Mot. for Extension, *United States v. Bhasin*,
No. 23-cv-1470 (E.D.N.Y. May 23, 2023) (Doc. 12) ..................................................... 19

Mot. for Extension, *United States v. Bhasin*,
No. 23-cv-1470 (E.D.N.Y. Sept. 19, 2023) (Doc. 16) ................................................... 19

Mot. for Extension, *United States v. Bhasin*,
No. 23-cv-1470 (E.D.N.Y. Oct. 13, 2023) (Doc. 20) .................................................... 19

Nat'l Taxpayer Advocate, *2011 Annual Report to Congress* (Vol. 1) (Dec. 31, 2011),
https://tinyurl.com/2011-NTA-Report ........................................................... 19, 20, 21

Nat'l Taxpayer Advocate, *2021 Purple Book* (Dec. 31, 2020),
    https://tinyurl.com/2021-Purple-Book .......................................................................18

Pet. for Cert., *Toth v. United States*,
    No. 22-177, 2022 WL 3757387 (U.S. Aug. 26, 2022) ...............................................17

Proposed Br. of Inst. for Justice as Amicus Curiae Supp. Neither Party, *United States v. Niksich*,
    No. 22-cv-2411 (N.D. Ga. Mar. 18, 2024) (Doc. 51-1)..................................................1

U.S. Br. in Opp., *Toth v. United States*,
    No. 22-177, 2022 WL 17361664 (U.S. Nov. 28, 2022) .........................................6, 14

U.S. Br., *Bittner v. United States*,
    No. 21-1195, 2022 WL 1591220, (U.S. May 17, 2022).................................................6

U.S. Br., *Bittner v. United States*,
    No. 21-1195, 2022 WL 4779399 (U.S. Sept. 30, 2022) ............................................16

U.S. Mot. for Summ. J., *Moore v. United States*,
    No. 13-cv-2063 (W.D. Wash. Feb. 3, 2015) (Doc. 32) ................................................6

U.S. Resp. to Mot. for Partial Summ. J., *United States v. Kaufman*,
    No. 18-cv-787 (D. Conn. Jan. 15, 2020) (Doc. 67)......................................................6

## INTEREST OF AMICUS CURIAE

The Institute for Justice is a public-interest law firm committed to securing constitutional protections for individual liberty. We have significant expertise on the Eighth Amendment's Excessive Fines Clause. For example, we represented the petitioner in *Timbs v. Indiana*, 139 S. Ct. 682 (2019), in which the Supreme Court incorporated the Excessive Fines Clause against the States. On remand in that case, we represented Mr. Timbs twice more, successfully, before the Indiana Supreme Court. We also have litigated other cases involving excessive-fines protections both under the federal constitution and under state constitutions. And in the FBAR context specifically, we represented the petitioner in *Toth v. United States*, seeking certiorari on a question presented here: whether the Excessive Fines Clause applies to civil FBAR penalties (in *Toth*, "willful" ones). 143 S. Ct. 552 (2023) (Gorsuch, J., dissenting from the denial of certiorari); *see also* Proposed Br. of Inst. for Justice as Amicus Curiae Supp. Neither Party, *United States v. Niksich*, No. 22-cv-2411 (N.D. Ga. Mar. 18, 2024) (Doc. 51-1) (offering similar views in an FBAR case).

In this case, the government's main argument for rejecting Defendants' excessive-fines defense is that the Excessive Fines Clause does not apply to civil FBAR penalties at all. We have a keen interest in the Court's resolving that first-order question correctly.

## INTRODUCTION

The parties' summary-judgment motions present a range of issues, most of which we have no views on. In invoking the Eighth Amendment, however, Defendants' cross-motion raises an important threshold question concerning the application of the Excessive Fines Clause to civil monetary penalties. *See* Defs.' Br. 22 (ECF 30) (asserting that the government's FBAR penalty "[v]iolates the 8th Amendment's 'Excessive Fines' Clause"). Three decades ago, the Supreme Court set the standard for determining when economic sanctions are subject to the Excessive Fines

Clause: Whether "civil or criminal," an economic sanction is subject to the Clause if it serves at least in part "to deter and to punish." *Austin v. United States*, 509 U.S. 602, 610, 622 (1993). *Austin* itself happened to arise in the context of civil *in rem* forfeitures. In the years since, however, lower courts—including this one—have applied *Austin*'s standard faithfully not just to *in rem* forfeitures, but to civil penalties more broadly.

These principles apply straightforwardly to civil FBAR penalties. As the government's brief admits, FBAR penalties serve, at least in part, to "promote[] retribution and deterrence." Gov't Br. 11 (ECF 27); *see also United States v. Warner*, 792 F.3d 847, 861 (7th Cir. 2015) ("Congress apparently intended FBAR penalties to have a deterrent effect . . . ."). That makes the threshold Eighth Amendment question an easy one to resolve. "[A] fine that serves even '*in part* to punish' is subject to analysis under the Excessive Fines Clause." *Toth v. United States*, 143 S. Ct. 552, 553 (2023) (Gorsuch, J., dissenting from the denial of certiorari) (quoting *Austin*, 509 U.S. at 610); *see also Tyler v. Hennepin County*, 598 U.S. 631, 648 (2023) (Gorsuch, J., joined by Jackson, J., concurring). By design, FBAR penalties serve in part (often in large part) to punish. Thus—and as a Member of the Supreme Court warned in an FBAR case last year—it is a "mistake[]" to exempt FBAR penalties from the Excessive Fines Clause. *Toth*, 143 S. Ct. at 553 (Gorsuch, J., dissenting from the denial of certiorari).

The government invites this Court to make precisely that mistake here. Gov't Reply 8 (ECF 31) (suggesting that the Excessive Fines Clause does not apply because "FBAR penalties are remedial and not punitive"). Doing so would be a grave error. It would conflict with Supreme Court precedent. It would split with the legal standard used by several courts of appeals. It would subvert a protection that is "fundamental to our scheme of ordered liberty." *Timbs v. Indiana*, 139

S. Ct. 682, 686 (2019) (citation omitted). And by exempting even notoriously punitive penalties from Eighth Amendment scrutiny, it would entrench a legal standard that promises injustice not only for the rich, but for the poor and politically powerless who are more often the targets of debilitating monetary sanctions. *See* Alexes Harris, *A Pound of Flesh: Monetary Sanctions as Punishment for the Poor* 3, 5-9 (2016). Whether or not the Court ultimately determines that Defendants' FBAR penalty violates the Excessive Fines Clause (a question neither side's briefs address in depth), the Court should reject the government's top-line position that the Clause does not apply at all.

## DISCUSSION

### A.   The Excessive Fines Clause applies to civil FBAR penalties.

The government resists Defendants' excessive-fines defense on a single ground: In the government's view, FBAR penalties "are remedial and not punitive." Gov't Reply 8 (ECF 31). On that premise, the government maintains that FBAR penalties are not subject to the Excessive Fines Clause at all. That position conflicts with precedent at a bedrock level, and it should be rejected.

> ### 1.   *The Excessive Fines Clause applies to civil monetary sanctions that are at least partly punitive.*

The Excessive Fines Clause protects against exorbitant fines not just in criminal court, but in civil-enforcement actions as well. Unlike other parts of the Constitution, some of which "are expressly limited to criminal cases," the "text of the Eighth Amendment includes no similar limitation." *Austin v. United States*, 509 U.S. 602, 607-08 (1993); *see also Hudson v. United States*, 522 U.S. 93, 103 (1997) ("The Eighth Amendment protects against excessive civil fines . . . ."). Thus, whether an economic sanction is subject to the Excessive Fines Clause turns not on whether it is "civil or criminal," but on whether it "serv[es] in part to punish." *Austin*, 509 U.S. at 610.

The Supreme Court's decision in *Austin*—a case involving the federal civil-forfeiture statute—shows these principles in practice. Civil forfeiture (as the name suggests) takes place in civil actions, not criminal. But as the Court held in *Austin*, several features confirmed that the forfeiture statute serves "at least in part as punishment." *Id.* at 610-11. To start, the statute "expressly provide[d] an 'innocent owner' defense," linking forfeitures at least in part to "the culpability of the owner." *Id.* at 619, 621-22; *see also, e.g.*, 21 U.S.C. § 881(a)(4)(C) (1988 & 1991) (establishing defense for persons who could show that misuse of their property took place without their "knowledge, consent, or willful blindness"). Then there was the legislative history, which characterized forfeitures as "a powerful deterrent." 509 U.S. at 620 (citation omitted). In addition, the conduct giving rise to forfeiture was elsewhere punishable criminally. *Id.* And by design, the forfeitures "ha[d] absolutely no correlation to any damages sustained by society or to the cost of enforcing the law"—meaning they could not be classified as purely compensatory (or "remedial"). *Id.* at 621 (citation omitted). Given these characteristics, the Court held that the forfeiture statute served at least partly "to deter and to punish," making it "subject to the limitations of the Eighth Amendment's Excessive Fines Clause." *Id.* at 622.

Applying *Austin* faithfully, courts across the Nation—this Court among them—have held that the Excessive Fines Clause applies to civil monetary sanctions that are at least partly punitive. *E.g.*, *Farina v. Metro. Transp. Auth.*, 409 F. Supp. 3d 173, 198-99 (S.D.N.Y. 2019) (denying motion to dismiss Eighth Amendment claim because plaintiffs plausibly alleged that toll penalties "were at least partly punitive in nature"); *see also Yates v. Pinellas Hematology & Oncology, P.A.*, 21 F.4th 1288, 1308 (11th Cir. 2021) (holding that civil penalties under the False Claims Act "constitute fines for the purposes of the Excessive Fines Clause"); *Pimentel v. City of Los Angeles*, 974 F.3d

917, 920 (9th Cir. 2020) ("We hold that the Excessive Fines Clause applies to municipal parking fines."); *Colo. Dep't of Lab. & Emp. v. Dami Hosp., LLC*, 442 P.3d 94, 100 (Colo. 2019) (noting that the Clause applies to penalties "whether those fines are part of a criminal scheme or a civil one"), *cert. denied*, 140 S. Ct. 849, 900 (2020); *People ex rel. Lockyer v. R.J. Reynolds Tobacco Co.*, 124 P.3d 408, 420 (Cal. 2005) (applying the Clause to civil penalties imposed for violations of cig- arette-distribution law); *Towers v. City of Chicago*, 173 F.3d 619, 624 (7th Cir. 1999) ("[C]ivil sanc- tions can constitute punishment, and therefore are subject to the limitations of the Excessive Fines Clause, if they serve, at least in part, retributive or deterrent purposes."); *accord New York v. United Parcel Serv., Inc.*, 942 F.3d 554, 599 n.36 (2d Cir. 2019) ("In awarding statutory civil penalties, district courts are also constrained, at the outer bounds, by the Eighth Amendment's Excessive Fines Clause."), *cert. denied*, 141 S. Ct. 242 (2020).

### 2. Because civil FBAR penalties are at least partly punitive, the Excessive Fines Clause applies.

The above principles apply straightforwardly to civil FBAR penalties. As the government acknowledges, Section 5321 serves, at least in part, to achieve "retribution and deterrence." Gov't Br. 11 (ECF 27). "Deterrence" (like retribution) "has traditionally been viewed as a goal of pun- ishment." *United States v. Bajakajian*, 524 U.S. 321, 329 (1998). And as Justice Gorsuch noted last year—in an FBAR case, no less—"a fine that serves even '*in part* to punish' is subject to analysis under the Excessive Fines Clause." *Toth v. United States*, 143 S. Ct. 552, 553 (opinion dissenting from the denial of certiorari) (quoting *Austin*, 509 U.S. at 610); *see also Tyler v. Hennepin County*, 598 U.S. 631, 648 (2023) (Gorsuch, J., joined by Jackson, J., concurring).[1] The syllogism is thus an

---

[1] The majority in *Tyler* did not reach the excessive-fines issue because it resolved the case under the Takings Clause instead. *Tyler v. Hennepin County*, 598 U.S. 631, 647-48 (2023).

easy one. The Excessive Fines Clause applies to monetary penalties that serve at least in part "to deter and to punish." *Austin*, 509 U.S. at 622. FBAR penalties, the government accepts, serve at least in part to deter and to punish. Gov't Br. 11 (ECF 27).[2] So the Excessive Fines Clause applies.

The statute's structure reinforces this conclusion. Under Section 5321, as in *Austin*, a defendant's exposure to penalties depends on their level of culpability. She can avoid liability altogether if the reporting failure was due to "reasonable cause"—a defense similar to the one in *Austin*. *Compare* 31 U.S.C. § 5321(a)(5)(B)(ii), *with* 21 U.S.C. § 881(a)(4)(C) (1988 & 1991). If she cannot make that showing, she faces up to $10,000 per violation. 31 U.S.C. § 5321(a)(5)(B)(i). And if the government proves that her violation was "willful" (construed to mean either knowing or reckless) the penalties escalate further still: to the greater of $100,000 or half the balance of unreported funds. *Id.* § 5321(a)(5)(C); *United States v. Reyes*, No. 21-cv-5578, 2024 WL 437096, at *4-6 (E.D.N.Y. Jan. 10, 2024). Simply, the framework is shot through with a "clear focus . . . on the culpability of the owner," making the penalties "look more like punishment, not less." *See Austin*, 509 U.S. at 619, 621-22. And again as in *Austin*, the amount of an FBAR penalty bears "absolutely no correlation" to any harm suffered by the government. *Id.* at 621 (citation omitted). For "willful" reporting violations, the maximum penalty is inherently subject to "dramatic variations" in size. *See id.* Similarly for non-willful violations, the maximum penalty is a flat $10,000—meaning

---

[2] *See also, e.g.*, U.S. Br. in Opp., *Toth v. United States*, No. 22-177, 2022 WL 17361664, at *17 (U.S. Nov. 28, 2022) (asserting that FBAR penalties "put[] a price on conduct that the government seeks to reduce or eliminate"); U.S. Br., *Bittner v. United States*, No. 21-1195, 2022 WL 1591220, at *16 (U.S. May 17, 2022) (commenting on "the deterrent effect of [non-willful FBAR] penalties"); U.S. Resp. to Mot. for Partial Summ. J. at 1, *United States v. Kaufman*, No. 18-cv-787 (D. Conn. Jan. 15, 2020) (Doc. 67) (noting that FBAR violations are "punishable by imposition of FBAR penalties"); U.S. Mot. for Summ. J. at 28, *Moore v. United States*, No. 13-cv-2063 (W.D. Wash. Feb. 3, 2015) (Doc. 32) ("Congress has made a policy judgment about the size of the penalty that will accomplish its remedial and deterrent purposes.").

"any relationship between the Government's actual costs and the amount of the sanction is merely coincidental." *Id.* at 622 n.14; *see also* Mem. Supp. U.S. Mot. for Summ. J. at 8, *United States v. Simonelli*, No. 6-cv-653 (D. Conn. Jan. 29, 2008) (Doc. 20-2) (Simonelli Br.) (explaining that FBAR penalties are "imposed regardless of whether there is any actual pecuniary loss" to the government.). The statute's design thus confirms what the government's brief makes clear: FBAR penalties are "fines" within the meaning of the Eighth Amendment.[3]

### 3.    *The contrary arguments lack merit.*

The government offers various arguments for exempting civil FBAR penalties from the Excessive Fines Clause. Each is without merit.

### a.    *FBAR penalties are not solely "remedial."*

Foremost, the government contends that FBAR penalties "are remedial and not punitive," Gov't Reply 8 (ECF 31), and therefore do not qualify as fines under the Eighth Amendment. For two reasons, the government is incorrect.

*First*, the government's analysis mistakes the correct framework. A monetary payment may (possibly) not be subject to the Excessive Fines Clause if it is solely, 100-percent compensatory and not at all punitive. If it serves a mix of remedial and punitive ends in combination, however, the Clause applies. "Because 'sanctions frequently serve more than one purpose,'" the Supreme Court "has said that the Excessive Fines Clause applies to *any* statutory scheme that 'serv[es] *in*

---

[3] Defendants develop the above point in their briefing. Defs.' Br. 23-25 (ECF 30). In doing so, however, they rely in part on the Supreme Court's decision in *United States v. Halper*, 490 U.S. 435 (1989). That decision construed the Double Jeopardy Clause, not the Excessive Fines Clause, and the Court's reasoning in *Halper* was later abrogated for double-jeopardy cases. *Hudson v. United States*, 522 U.S. 93, 101 (1997). That abrogation did not call into question *Austin*'s similar standard for determining whether a monetary penalty is a fine under the Excessive Fines Clause. *See id.* at 102-03 (citing *Austin* approvingly for the proposition that "[t]he Eighth Amendment protects against excessive civil fines, including forfeitures").

*part* to punish.'" *Tyler*, 598 U.S. at 648 (Gorsuch, J., joined by Jackson, J., concurring) (quoting *Austin*, 509 U.S. at 610). Thus, "[i]t matters not whether the scheme has a remedial purpose, even a predominantly remedial purpose. So long as the law 'cannot fairly be said *solely* to serve a remedial purpose,' the Excessive Fines Clause applies." *Id.* (quoting *Austin*, 509 U.S. at 610); *see also Austin*, 509 U.S. at 610 ("We need not exclude the possibility that a forfeiture serves remedial purposes to conclude that it is subject to the limitations of the Excessive Fines Clause.").

That alone disposes of the government's chief argument. The government acknowledges that FBAR penalties serve punitive ends, at least in part; in the government's telling, the penalties "promot[e] retribution and deterrence" while serving the "additional" purpose "of reimbursing the Government for the cost of investigating and recovering funds." Gov't Br. 11 (ECF 27). Even on that account, FBAR penalties still are subject to review under the Excessive Fines Clause. *Toth*, 143 S. Ct. at 553 (Gorsuch, J., dissenting from the denial of certiorari) ("Even supposing . . . that Ms. Toth's penalty bore both punitive and compensatory purposes, it would still merit constitutional review [under the Excessive Fines Clause].""). A penalty's remedial features may bear on the second-order question whether the penalty is *invalid* under the Excessive Fines Clause. But contrary to the government's suggestion, those features do not exempt the penalty from Eighth Amendment scrutiny altogether.

*Second*, calling FBAR penalties "remedial"—even if only in part—is likely unsound in its own right. The term "remedial" has different meanings in different contexts. (More on that below. *See* p. 13, *infra*.) And in the context of the Excessive Fines Clause, a purely "'[r]emedial action' is one 'brought to obtain compensation or indemnity.'" *Bajakajian*, 524 U.S. at 329 (quoting Black's Law Dictionary 1293 (6th ed. 1990)). Actions to impose FBAR penalties are no such thing. As the

government has elsewhere acknowledged (correctly), "[t]he FBAR penalty does not compensate the government for actual pecuniary loss." Simonelli Br., *supra*, at 8. So characterizing FBAR penalties as remedial—even in part—would appear to be incorrect. *See, e.g.*, *Yates*, 21 F.4th at 1308 (holding that civil False Claims Act penalties are Eighth Amendment fines and noting that they "are preset by Congress and compulsory irrespective of the magnitude of the financial injury to the United States, if any"); *United States v. Viloski*, 814 F.3d 104, 109 (2d Cir. 2016) (characterizing "purely 'remedial' forfeitures" as those "intended not to punish the defendant but to compensate the Government for a loss or to restore property to its rightful owner"); *Towers*, 173 F.3d at 624 (holding that municipal civil penalty was an Eighth Amendment fine where it was "not solely remedial" and in fact "appear[ed] to serve little or no remedial purpose" because it "d[id] not compensate the City for any loss sustained as a result of the violations"); *Dorce v. City of New York*, 608 F. Supp. 3d 118, 143 (S.D.N.Y. 2022) ("[A] fine is remedial if it is 'intended only to compensate the government for lost revenue.'"); *cf. Kokesh v. SEC*, 581 U.S. 455, 465 (2017) ("SEC disgorgement . . . bears all the hallmarks of a penalty: It is imposed as a consequence of violating a public law and it is intended to deter, not to compensate.").

The Supreme Court's decision in *United States v. Bajakajian* illustrates the point. There, the government sought to forfeit money that (much like Mr. Benishai's) had gone unreported in violation of the Bank Secrecy Act. 524 U.S. at 325 & nn.1-2; *see also* 31 U.S.C. § 5316(a)(1)(A). As here, the government in *Bajakajian* couched the forfeiture as "serv[ing] important remedial purposes." 524 U.S. at 329 (citation omitted). As here, the government contended that the Excessive Fines Clause did not apply. Yet the Supreme Court rejected that theory out of hand. In its design, the Court reasoned, the Bank Secrecy Act's forfeiture provision did not secure "compensation or

indemnity" for the government. *See id.* (citation omitted). It addressed "a loss of information"—not money—which "would not be remedied" by confiscating the unreported funds. *Id.* It served to deter reporting violations—a punitive function, not a remedial one. *Id.* So, in the Court's view, the forfeiture provision served "no remedial purpose" at all. *Id.* at 332. For good measure, the Court added, "[e]ven if the Government were correct in claiming that the forfeiture . . . is remedial in some way," that feature still would not immunize it from Eighth Amendment scrutiny. *Id.* at 329 n.4. "[T]he forfeiture would still be punitive in part," which was "sufficient to bring [it] within the purview of the Excessive Fines Clause." *Id.*

This precedent translates perfectly to FBAR penalties. Like the forfeiture in *Bajakajian*, FBAR penalties are an enforcement mechanism for the Bank Secrecy Act. Like the forfeiture in *Bajakajian*, they "do[] not serve the remedial purpose of compensating the Government for a loss." *See id.* at 329. Like the forfeiture in *Bajakajian*, they address "a loss of information"—not revenue—and serve to deter reporting violations. *See id.*; Gov't Br. 11 (ECF 27). And, of course, "[d]eterrence . . . has traditionally been viewed as a goal of punishment." *Bajakajian*, 524 U.S. at 329. *Bajakajian* thus cements the teaching of *Austin*. Even if partly remedial (a non-obvious proposition), FBAR penalties are at least partly punitive as well, so the Excessive Fines Clause applies.

The government points out that, in some cases, an FBAR violation *may* be associated with fiscal harm—for example, lost tax revenue or "the expenses of investigating tax fraud." Gov't Br. 11 (ECF 27). That does not alter the penalties' non-compensatory character. The threshold question whether a penalty is subject to the Excessive Fines Clause entails a "categorical" inquiry, not a "case-by-case" analysis of "the civil sanction imposed in th[e] particular case." *United States v. Ursery*, 518 U.S. 267, 287 (1996). And categorically, Section 5321(a)(5) sets maximum FBAR

penalties with no "reference to any losses or expenses [the government] ha[s] incurred." *See Toth*, 143 S. Ct. at 553 (Gorsuch, J., dissenting from the denial of certiorari). In short—and, again, as the government has elsewhere said—"[t]he FBAR penalty does not compensate the government for actual pecuniary loss." Simonelli Br., *supra*, at 8. The government thus cannot circumvent the Excessive Fines Clause simply by recasting its penalties as "remedial." *Bajakajian*, 524 U.S. at 343 n.19 ("[E]ven a clearly punitive criminal fine or forfeiture could be said in some measure to reimburse for criminal enforcement and investigation."); *Tyler*, 598 U.S. at 648-49 (Gorsuch, J., joined by Jackson, J., concurring) ("Nor, this Court has held, is it appropriate to label sanctions as 'remedial' when (as here) they bear '"no correlation to any damages sustained by society or to the cost of enforcing the law,"' and 'any relationship between the Government's actual costs and the amount of the sanction is merely coincidental.'" (quoting *Austin*, 509 U.S. at 621-22 & n.14)). Whether a particular FBAR violation is linked to fiscal harm certainly might inform the ultimate question whether a penalty is excessive. But it does not control whether the Excessive Fines Clause applies in the first place.

> b.    *The standard for determining whether a penalty is "criminal" under the Fifth and Sixth Amendments differs from the standard for determining whether it is partly punitive under the Eighth Amendment.*

The government also suggests that because (in the government's view) FBAR penalties would not qualify as "criminal" for purposes of Fifth and Sixth Amendment protections, they cannot qualify as a "fine" for purposes of the Eighth Amendment. Gov't Reply 8 (ECF 31) (invoking "the factors in *Kennedy v. Mendoza-Martinez*"). That confuses qualitatively different legal standards. As relevant here, the Fifth and Sixth Amendments secure protections "that attend a criminal prosecution" specifically. *See Austin*, 509 U.S. at 610 n.6. The standard articulated in cases like *Kennedy v. Mendoza-Martinez* thus serves to distinguish, not between punitive measures and non-

punitive ones, but between civil sanctions and criminal. 372 U.S. 144, 167-68 (1963); *see also United States v. Ward*, 448 U.S. 242, 248 (1980). That inquiry is fundamentally different from the standard for determining whether a penalty is a "fine" within the meaning of the Eighth Amendment.

On this point, too, the Supreme Court has been clear. In *Austin*, the government devoted much of its brief to arguing that "the Eighth Amendment cannot apply to a civil proceeding unless that proceeding is so punitive that it must be considered criminal under *Kennedy v. Mendoza-Martinez* and *United States v. Ward*." 509 U.S. at 607 (internal citations omitted). The Court rejected that contention root and branch. *Id.* ("We disagree."); *see also id.* at 610 n.6 ("[T]he United States' reliance on *Kennedy v. Mendoza–Martinez* and *United States v. Ward* is misplaced."). The *Kennedy* standard, the Court reasoned, is designed to identify those civil penalties that are rightly viewed as "criminal" and thus implicate constitutional protections reserved for criminal proceedings alone. *Id.* at 610 n.6. But whether a penalty is an Eighth Amendment "fine" presents a different question—asking not whether the penalty "is civil or criminal," but simply whether it serves at least in part to punish. *Id.* at 610; *see also id.* ("The notion of punishment . . . cuts across the division between the civil and the criminal law." (citation omitted)). In years to come, the Court would hold that same line: It reaffirmed that *Austin* remains the yardstick for the Excessive Fines Clause even as it extended the *Kennedy* standard to the Double Jeopardy Clause. *Hudson* 522 U.S. at 102-03.[4]

---

[4] Several courts have concluded that the standard of *Hudson* and *Kennedy* guides the common-law inquiry into whether civil FBAR penalties survive the death of their targets. *See, e.g., United States v. Gaynor*, No. 21-cv-382, 2023 WL 5749278, at *7-9 (M.D. Fla. Sept. 6, 2023); *United States v. Estate of Schoenfeld*, 344 F. Supp. 3d 1354, 1370-73 (M.D. Fla. 2018). The parties in this case appear to agree that this standard is the correct one for analyzing the survival question—an issue we offer no view on. Gov't Br. 10 (ECF 27); Defs.' Br. 17-18 (ECF 30). Whether or not the *Hudson/Kennedy* standard governs the common-law survival question, however, it differs fundamentally from the standard for whether a penalty is a "fine" under the Excessive Fines Clause.

For similar reasons, the government is mistaken to harness Fifth and Sixth Amendment precedent in service of its view that FBAR penalties are "remedial" for purposes of the Eighth. *E.g.*, Gov't Reply 8 (ECF 31). For the Fifth and Sixth Amendments (as discussed above) the relevant line is between punishments that are "criminal" and those that are not; even if a sanction might, "'in common parlance,' be described as punishment," for instance, the Double Jeopardy Clause is triggered only if the sanction is criminal. *Hudson*, 522 U.S. at 99. In articulating that line — between criminal and non-criminal punishments — the mid-century Supreme Court sometimes used the term "remedial" as a shorthand for the universe of non-criminal sanctions. *See* Kenneth Mann, *Punitive Civil Sanctions: The Middleground Between Criminal and Civil Law*, 101 Yale L.J. 1795, 1829 (1992) (noting that the term "remedial" was used as "a catchall label for sanctions that courts did not want to define as punitive in the criminal sense, but that were clearly not simple compensatory damages"). Again, however, the Excessive Fines Clause is different in kind: While the Double Jeopardy Clause and the Sixth Amendment "are expressly limited to criminal cases," the Excessive Fines Clause "includes no similar limitation." *Austin*, 509 U.S. at 607-08. In turn, many civil penalties may be "remedial" (i.e., civil) enough to fall outside the protections of the Fifth and Sixth Amendments while still being "punitive" enough to implicate the Excessive Fines Clause. *Ursery*, 518 U.S. at 287 ("Forfeitures effected under 21 U.S.C. §§ 881(a)(4) and (a)(7) are subject to review for excessiveness under the Eighth Amendment after *Austin*; this does not mean, however, that those forfeitures are so punitive as to constitute punishment for the purposes of double jeopardy.").

> c. *Applying the Excessive Fines Clause to monetary sanctions like civil FBAR penalties does not imperil the government's ability to impose civil penalties in general.*

The government, at times, has cautioned that treating "deterrence" as the touchstone for the Excessive Fines Clause "would threaten to transform every civil penalty into a form of punishment for Eighth Amendment purposes, since every civil penalty presumably deters to some extent the conduct for which the penalty is assessed." U.S. Br. in Opp., *Toth v. United States*, No. 22-177, 2022 WL 17361664, at *18 (U.S. Nov. 28, 2022); *see also* Gov't Br. 11 (ECF 27). Yet as the Supreme Court has made clear, that is precisely how the doctrine is meant to work. In *Hudson*, for example, the Court construed the Double Jeopardy Clause narrowly as "protect[ing] only against the imposition of multiple *criminal* punishments for the same offense." 522 U.S. at 99. But the Excessive Fines Clause, the Court noted, is different: It applies more broadly to "protect[] against excessive civil fines." *Id.* at 103. Contrary to the government's suggestion, moreover, applying the Excessive Fines Clause in this way does not imperil civil penalties writ large; it simply ensures that they are subject to a measure of judicial review for excessiveness. *Ursery*, 518 U.S. at 287 (noting that if a penalty is a "fine," "the second stage of inquiry under the Excessive Fines Clause asks whether the particular sanction in question is so large as to be 'excessive'").

### 4.  Lower-court decisions that have held the Excessive Fines Clause inapplicable to FBAR penalties are unsound.

Several courts have held that FBAR penalties are not subject to the Excessive Fines Clause. Those decisions (not cited in the parties' briefs) are ill-advised and should not be followed.

In **United States v. Collins**, a district court in Pennsylvania held that FBAR penalties "are not 'fines' covered by the Eighth Amendment" because they (a) are "at least partially" remedial and (b) "can be imposed even where . . . the [government] chooses not to undertake a criminal

action." No. 18-cv-1069, 2021 WL 456962, at *8-9 (W.D. Pa. Feb. 8, 2021), *aff'd on other grounds*, 36 F.4th 487 (3d Cir. 2022). Both those grounds of decision break with Supreme Court precedent. Where the court in *Collins* viewed FBAR penalties as "at least partially" remedial, the Supreme Court in *Austin* was emphatic: Only if a civil sanction "serves *solely* a remedial purpose" may it fall outside the compass of the Excessive Fines Clause. 509 U.S. at 622 (emphasis added); *see also, e.g.*, *Dorce*, 608 F. Supp. 3d at 143-44. And where the court in *Collins* gave weight to the fact that FBAR penalties might not be paired with a criminal-court prosecution, the Court in *Austin* again was emphatic: The "notion of punishment" contemplated in the Excessive Fines Clause "cuts across the division between the civil and the criminal law." *Austin*, 509 U.S. at 610 (citation omitted); *see also Toth*, 143 S. Ct. at 553 (Gorsuch, J., dissenting from the denial of certiorari) ("[The Excessive Fines Clause] would mean little if the government could evade constitutional scrutiny under the Clause's terms by the simple expedient of fixing a 'civil' label on the fines it imposes and declining to pursue any related 'criminal' case.").

The court erred just as badly in ***Landa v. United States***. There, the Court of Federal Claims ruled that FBAR penalties are "not subject to the eighth amendment's limitations on excessive fines." 153 Fed. Cl. 585, 601 (2021). Its ground of decision? The Fifth and Sixth Amendment precedent discussed above, which the Supreme Court has said—explicitly—does not apply to the Excessive Fines Clause. *Compare id.* at 600-01 (applying "the factors established in *Kennedy* [*v. Mendoza-Martinez*]"), *with Austin*, 509 U.S. at 607 ("[The government] further suggests that the Eighth Amendment cannot apply to a civil proceeding unless that proceeding is so punitive that it must be considered criminal under *Kennedy v. Mendoza–Martinez* and *United States v. Ward*. We disagree." (internal citations omitted)). In fact, the Supreme Court has justified reading the Fifth

-15-

Amendment's Double Jeopardy Clause narrowly in part *because* the Excessive Fines Clause applies more broadly to civil penalties. *Hudson*, 522 U.S. at 102-03; *Ursery*, 518 U.S. at 286 (noting that the two Clauses have "never [been] understood as parallel to, or even related to," one another).

Then there's the district-court ruling in ***United States v. Schwarzbaum***, No. 18-cv-81147, 2020 WL 2526500 (S.D. Fla. May 18, 2020), *vacated on other grounds*, 24 F.4th 1355 (11th Cir. 2022). The court in *Schwarzbaum* styled FBAR penalties as equivalent to "[t]ax penalties," which, the court reasoned, "have been held to fulfill remedial purposes, as opposed to punitive purposes relevant in the Eighth Amendment." *Id.* at *6. Whatever might be said of "tax penalties," however, the government has advised the Supreme Court (correctly) that "a civil penalty assessed under Section 5321 is not a 'tax penalty.'" U.S. Br., *Bittner v. United States*, No. 21-1195, 2022 WL 4779399, at *6 (U.S. Sept. 30, 2022); *see also* Gov't Br. 14 n.4 (ECF 27) (similar). As for *Schwarzbaum*'s reference to "remedial purposes," the Supreme Court (at risk of belaboring the point) has been clear: Civil penalties are not exempt from the Excessive Fines Clause simply because they may fulfill some remedial purposes. *Austin*, 509 U.S. at 610. To compound its errors, the district court in *Schwarzbaum* (like the court in *Landa*) took its cue, not from the Supreme Court's excessive-fines precedents, but from double-jeopardy case law instead. 2020 WL 2526500, at *6, 7.

Lastly, there's ***United States v. Toth***—which spurred a dissent from a Member of the Supreme Court to admonish future courts against repeating the First Circuit's "mistakes." *Toth*, 143 S. Ct. at 553 (Gorsuch, J., dissenting from the denial of certiorari). As detailed in Justice Gorsuch's opinion, the First Circuit in *Toth* fused most of the errors described above. It misstyled FBAR penalties as "remedial." *United States v. Toth*, 33 F.4th 1, 18 (1st Cir. 2022). *But see Toth*, 143 S. Ct. at 553 (Gorsuch, J., dissenting from the denial of certiorari). It misread *Austin* as applying only

to monetary penalties that are tied to criminal-court violations. *Toth*, 33 F.4th at 16. *But see* 143 S. Ct. at 553 (Gorsuch, J., dissenting from the denial of certiorari). And it wrongly substituted double-jeopardy precedent for excessive-fines precedent. *Toth*, 33 F.4th at 16-19. The result, as Justice Gorsuch noted, was a warped view of the Excessive Fines Clause that conflicts directly with the legal standards used by other federal courts of appeals. *Toth*, 143 S. Ct. at 553 (Gorsuch, J., dissenting from the denial of certiorari) (noting the petitioner's argument that the First Circuit's *Toth* decision "clashes with the approach many other courts have taken in similar cases"); *see also* Pet. for Cert., *Toth v. United States*, No. 22-177, 2022 WL 3757387, at *19-25 (U.S. Aug. 26, 2022) (describing conflicting decisions from the Seventh, Ninth, and Eleventh Circuits).

At base, the decisions detailed above make one point clear: The Department of Justice has successfully led several lower courts astray on a question of basic Eighth Amendment law. Their example should not be emulated.

### B. The scope of the Excessive Fines Clause is an important issue that merits the Court's attention.

1.      The scope of the Excessive Fines Clause is an important issue that warrants serious attention. The government's position conflicts with Supreme Court precedent. It conflicts with the standard used by several courts of appeals and by judges of this District. It subverts a Bill of Rights protection that is "deeply rooted in this Nation's history and tradition." *Timbs v. Indiana*, 139 S. Ct. 682, 689 (2019) (citation omitted). And its vision for the Excessive Fines Clause promises injustice not just for the wealthy, but for the poor and politically powerless who are most often in need of the Clause's protection. *See generally* Alexes Harris, *A Pound of Flesh: Monetary Sanctions as Punishment for the Poor* 3, 5-9 (2016). The Court should take pains to resolve this issue correctly. *Cf. United States v. Burke*, 504 U.S. 229, 246 (1992) (Scalia, J., concurring in the judgment)

("[T]he Supreme Court need not render judgment on the basis of a rule of law whose nonexistence is apparent on the face of things, simply because the parties agree upon it—particularly when the judgment will reinforce error already prevalent in the system.").

FBAR cases, moreover, spotlight *why* the Excessive Fines Clause is so "fundamental to our scheme of ordered liberty." *Timbs*, 139 S. Ct. at 689 (citation omitted). Civil FBAR penalties can be "extraordinarily harsh." Nat'l Taxpayer Advocate, *2021 Purple Book* at 74 (Dec. 31, 2020), https://tinyurl.com/2021-Purple-Book. They are ripe for the sort of abuses the Framers sought to curtail. And in recent years, the government has exploited them to the hilt. In one case, the government sought to impose an $8.8 million FBAR penalty on "an almost one hundred-year-old Holocaust survivor." *United States v. Schik*, No. 20-cv-2211 (MKV), 2022 WL 685415, at *1 (S.D.N.Y. Mar. 8, 2022). In *Landa*, the government imposed a penalty of $3.1 million, based on unreported funds originally placed in foreign accounts to keep them "hidden from the Nazis and subsequently hidden from the Communist authorities in the Soviet Union." 153 Fed. Cl. at 591-92, 602. The list goes on. *See, e.g.*, *Toth*, 143 S. Ct. at 552 (Gorsuch, J., dissenting from the denial of certiorari) (detailing Monica Toth's background).

Nor is the importance of this issue confined to society's wealthiest. Ordinary people have foreign bank accounts too—immigrants, first-generation citizens, and citizens working overseas. These demographics are targeted no less relentlessly. Last year, to give just one example, the government sued an elderly immigrant couple on Long Island, having ratcheted up their "non-willful" FBAR penalties to the max. For three years of unintentional violations, the government imposed the maximum $10,000 per-year penalty—and then, for good measure, doubled it, for a total of $60,000, because the husband and wife each had been signatories on a pair of relatively modest

New Delhi accounts. Am. Compl. ¶¶ 7, 16-17, 26, *United States v. Bhasin*, No. 23-cv-1470 (E.D.N.Y. Mar. 16, 2023) (Doc. 6). After a series of pro se filings, the couple eventually defaulted. Mot. for Extension, *United States v. Bhasin*, No. 23-cv-1470 (E.D.N.Y. May 23, 2023) (Doc. 12) ("The undersigned has not been well and has undergone four surgeries in the past few months and am going through rehabilitation at present."); Mot. for Extension, *United States v. Bhasin*, No. 23-cv-1470 (E.D.N.Y. Sept. 19, 2023) (Doc. 16) ("I am currently incapacitated and unable to move."); Mot. for Extension, *United States v. Bhasin*, No. 23-cv-1470 (E.D.N.Y. Oct. 13, 2023) (Doc. 20) ("I have asked my relative/friend's assistance in writing this letter."); Default Judgment, *United States v. Bhasin*, No. 23-cv-1470 (E.D.N.Y. Feb. 7, 2024) (Doc. 28).

That example, moreover, appears not to be out of the ordinary. Other examples, courtesy of the IRS's National Taxpayer Advocate—

➢ "'I am fairly typical of dual citizens living outside the U.S. since 1980. I've been trying now for over a year to become compliant, not having realized like almost everyone here that I needed to file FBARs for past years. I have to pay someone at least a couple thousand francs to do it for me, even though I have not owed any U.S. taxes for years and have always filed and paid Swiss taxes. This is simply sick, and for a family that struggles financially. I see no reason at all to remain an American. There is a moral dilemma here.'" Nat'l Taxpayer Advocate, *2011 Annual Report to Congress* (Vol. 1), at 196 (Dec. 31, 2011), https://tinyurl.com/2011-NTA-Report.

➢ "'I am an average American-born citizen who married a Dane and moved to Denmark. I was unaware that I was supposed to file a form telling the IRS of a bank account I opened here in Denmark to deposit my meager income from my Danish

employer. Not only am I to report my bank account but also all other accounts, including pension and retirement accounts. I was hunted down by the IRS and harassed for living overseas but not claiming a foreign bank account. It's become overwhelming and intrusive. I am now considering giving up my U.S. citizenship as I can honestly say that this abuse of the IRS and government power is not what America is supposed to be about. These regulations have now lost all sense of logic and reason and have been used to harass average citizens living and working abroad trying to make a simple living. It's becoming abusive.'" *Id.*

➢ "'I was born in the U.S., but immigrated to Canada 43 years ago, married a Canadian and became a Canadian citizen five years later. Since then I have resided, worked and paid taxes in Canada, and never had any US source income or US assets of any kind. I never renewed my US passport and entered the US only for short family visits or vacations. I consider myself a Canadian. With no US income or assets, I had no reason to assume you needed to file US tax returns, and had never heard of FBAR reports. In 2010, my mother's US accountant, after completing her estate taxes, assured me I had no further personal filing obligations. At retirement age, I suddenly find out that the IRS claims I owe them $70,000 for not annually filing a 1-page form reporting my "off-shore" Canadian bank and investment accounts!! They threaten to take EVERYTHING if I resist their claims, but offer an "amnesty" if you come forward and file the FBARs. It holds out the prospect of reducing the penalty to zero, but in practice the IRS apparently always claims 5-25%

of the money, including that of my Canadian husband since we converted to joint accounts in November, 2010 after I was re-diagnosed with lymphoma.'" *Id.* at 197.

Simply, FBAR penalties have evolved into a prime source of "royal revenue." *Browning-Ferris Indus. of Vt., Inc. v. Kelco Disposal, Inc.*, 492 U.S. 257, 271 (1989). Since 2012, the government has assessed well over one billion dollars in FBAR penalties. Dep't of the Treasury, *2020 Report of Foreign Bank and Financial Accounts (FBAR) Report to Congress* at 10, https://tinyurl.com/IRS-FBAR-Report. And doggedly, it has resisted any Eighth Amendment constraint. When strategically beneficial, the government embraces the obvious: that FBAR penalties are punitive and deterrent. *E.g.*, Simonelli Br., *supra*, at 7-11 (insisting that FBAR penalties are not compensatory and thus not dischargeable in bankruptcy). Yet when it comes to constitutional limits, the government has persuaded a raft of lower courts to exempt these penalties from Eighth Amendment scrutiny altogether. Having done so, it then shops those flawed decisions to other jurisdictions—leading to a growing list of erroneous and harmful lower-court opinions. That pattern should not persist.

2.    The threshold Eighth Amendment question—whether the Excessive Fines Clause applies to FBAR penalties at all—is presented in the party briefs now on file. Less well developed (by either side) is the second-order question: whether, if the Eighth Amendment applies, the penalty imposed on Mr. Benishai violates it. The government rests its case on the categorical rule that the Eighth Amendment is inapplicable. Gov't Reply 8 (ECF 31). As discussed, that rule is unsound. For their part, Defendants appear to rest on an equally categorical rule: that under the Eighth Amendment, "there can be no amount of punitive fine assessed upon a deceased person that serves any legitimate purpose." Defs.' Br. 25 (ECF 30). We do not currently take a position on that rule, though, at a minimum, the fact that an asserted wrongdoer is dead would appear to be a factor that

might potentially inform the excessiveness analysis. *See Viloski*, 814 F.3d at 110 (distilling four factors that may guide the excessiveness analysis but remarking that they are not "exhaustive"); *see also State v. Timbs*, 134 N.E.3d 12, 39 (Ind. 2019) (explaining that the analysis is "factually intensive and depends on the totality of the circumstances"); *see generally* Beth A. Colgan & Nicholas M. McLean, *Financial Hardship and the Excessive Fines Clause: Assessing the Severity of Property Forfeitures After* Timbs, 129 Yale L.J. Forum 430 (2020). However the Court resolves the ultimate excessiveness question, though, it should reject the government's top-line argument that the Excessive Fines Clause has no application at all. That theory is profoundly wrong, and it is part of a years-long project to skirt the Eighth Amendment and neuter the Constitution's "[p]rotection against excessive punitive economic sanctions." *Timbs*, 139 S. Ct. at 689.

## CONCLUSION

Whether or not the Court ultimately determines that the penalty imposed on Defendants is excessive, the Court should reject the government's position that FBAR penalties are subject to no limit at all under the Excessive Fines Clause.

Dated: March 27, 2024.

Respectfully submitted,

/s/ William R. Aronin
William R. Aronin (SDNY Bar No. WA0685)
Samuel B. Gedge*
Michael N. Greenberg*
INSTITUTE FOR JUSTICE
901 N. Glebe Road, Suite 900
Arlington, VA 22203
Telephone: 703.682.9320
Facsimile: 703.682.9321
E-mail: waronin@ij.org
        sgedge@ij.org
        mgreenberg@ij.org

*\*Pro hac vice* motion filed concurrently