UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

                    Plaintiff,

v.

HANNA HENDLER, as Administrator and as Distributee of the Estate of David Benishai, et al.,

                    Defendants.

23 Civ. 3280 (DEH)

**OPINION AND ORDER**

---

DALE E. HO, United States District Judge:

In this action, Plaintiff United States of America (the "Government") sues Defendants Hanna Hendler and Danielle Benishai, the wife and daughter, respectively, of David Benishai, who died in 2021.[1] *See* Compl. ¶¶ 9, 10, ECF No. 1. The Government brings this action against Defendants in their capacities as distributees (and, in the case of Hendler, as administrator) of Benishai's estate, seeking unpaid tax assessments. The parties cross-move for summary judgment. *See* ECF Nos. 25, 29. For the reasons given below, the Government's motion is **GRANTED** and Defendants' motion is **DENIED.**

### BACKGROUND

The following facts are drawn from the parties' evidentiary submissions in connection with the cross-motions. *See N.Y. State Teamsters Conf. Pension & Ret. Fund v. C & S Wholesale Grocers, Inc.*, 24 F.4th 163, 170 (2d Cir. 2022).[2] Because Defendants do not submit

---

[1] All references to "Benishai" are to David Benishai, unless otherwise noted; Defendant Danielle Benishai is referred to using her full name or, when grouped together with Hendler, as "Defendants."

[2] In all quotations from cases, the Court omits citations, footnotes, emphases, internal quotation marks, brackets, and ellipses unless otherwise indicated. All references to Rules are to the Federal Rules of Civil Procedure.

evidence or a response to the Government's statement of material facts ("SMF"), *see* ECF No. 28, the Court treats those facts as undisputed. *See Horn v. Medical Marijuana, Inc.*, 80 F.4th 130, 135 (2d Cir. 2023).

Benishai was a United States citizen. SMF ¶ 1. During the seven calendar years 2004 through 2010, he had a financial interest or signature authority over nine bank accounts in Israel. *Id*. Three of these accounts were personal; the remaining six were in the name of two corporate entities, and Benishai had signature authority over these accounts. *Id.* ¶ 2. In the years in question, the accounts had combined balances of at least $10,000 in U.S. dollars. *Id.* ¶¶ 3-4. Benishai did not timely file Forms TD F 90-22.1, Report of Foreign Bank and Financial Accounts ("FBARs") for the accounts in question during these years as required. *Id.* ¶ 5.

On or around March 18, 2015, Benishai filed untimely FBARs, noting his ownership of the accounts and their combined balances of more than $10,000 from 2004 to 2010. *Id.* ¶ 6. The Internal Revenue Service (the "IRS") initiated an examination of Benishai's FBARs in October 2015, and in connection with this examination, Benishai and his representatives agreed in writing several times to extend the time period in which the Government could assess FBAR penalties, ultimately through June 30, 2021. *Id.* ¶¶ 7-9.

Benishai died on January 6, 2021. *Id.* ¶ 10. On April 21, 2021, the IRS assessed FBAR penalties totaling $250,000 against Benishai. *Id.* ¶ 11. On April 27, 2021, the IRS sent a letter regarding these penalties to the last known address of Benishai's estate, and the letter was returned as undeliverable. *Id.* ¶ 12. Following the United States Supreme Court's decision in *Bittner v. United States*, 598 U.S. 85 (2023), which helding as a matter of statutory interpretation that $10,000 penalties for non-willful failure to file FBARs accrue on a per-report, not a per-account, basis, *see* 598 U.S. at 103-04, the IRS reduced the penalties against Benishai to $70,000—$10,000 for each of the seven years of unreported FBARs—plus additional statutory

penalties and interest. SMF ¶ 13. As of October 3, 2023, Benishai's estate owed a total of $81,934.53, including additional penalties and interest. *Id.* ¶ 14.

## LEGAL STANDARDS

Summary judgment is appropriate when a moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for a nonmoving party." *Frost v. N.Y.C. Police Dep't*, 980 F.3d 231, 242 (2d Cir. 2020). A party opposing summary judgment must establish a genuine issue of fact by citing to particular parts of materials in the record. *See* Fed. R. Civ. P. 56(c)(1)(A). "A party opposing summary judgment normally does not show the existence of a genuine issue of fact to be tried merely by making assertions that are based on speculation or are conclusory." *S. Katzman Produce Inc. v. Yadid*, 999 F.3d 867, 877 (2d Cir. 2021). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *accord Saleem v. Corp. Transp. Grp.*, 854 F.3d 131, 148 (2d Cir. 2017). In evaluating a motion for summary judgment, a court must "construe the record evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Torcivia v. Suffolk Cnty.*, 17 F.4th 342, 354 (2d Cir. 2021). On cross-motions for summary judgment, "the court evaluates each party's motion on its own merits and all reasonable inferences are drawn against the party whose motion is under consideration." *Roberts v. Genting New York LLC*, 68 F.4th 81, 88 (2d Cir. 2023).

## DISCUSSION

The Government's motion is **GRANTED** and Defendants' motion is **DENIED** for the reasons given below.

3

A.    **Effect of Benishai's Death on Government's FBAR Claim**

First, the Government's claims accrued prior to Benishai's death and are not abated by it, meaning they may be collected against his estate. Benishai died on January 6, 2021, and the IRS assessed penalties related to the FBARs on April 21, 2021. *See* SMF ¶¶ 10-11. Defendants make two related arguments: first, that the Government lacks the ability to assess FBAR penalties against a taxpayer's estate (rather than against the taxpayer him- or herself); and second, that to the extent that the Government had any claim against Benishai prior to the April 2021 assessments relating to FBARs, that claim was extinguished by Benishai's death. *See* Defs.' Br. Supp. Mot. Summ. Judgment ("Defs.' Br.") 14-19, ECF No. 30. Both of these arguments fail.

Defendants' first argument is essentially as follows: the FBAR penalties accrued at the time they were assessed in 2021—but this was after Benishai had passed away, and such penalties cannot be assessed against a decedent. But Defendant's premise is incorrect, because the penalties at issue accrued *before* Benishai died. FBARs must be filed by June 30 of the year following a calendar year in which a taxpayer held interests in foreign accounts over $10,000. *See* 31 C.F.R. § 103.27(c). The FBARs at issue in this lawsuit concern accounts Benishai maintained in 2004 through 2010, meaning the Government's right to levy an assessment regarding Benishai's failure to file FBARs for the final year in question accrued on June 30, 2011, (while Benishai was still alive)—not in 2021, when the assessments were actually assessed (and after he had already passed away).

Now that Benishai is deceased, the Government may pursue its claims against his estate. The Second Circuit has stated that:

> It seems impermissible for the estate of a deceased taxpayer, who during his lifetime established a pattern of conduct by which he fraudulently avoided taxes, to avoid a liability that the taxpayer himself could not have avoided if his conduct had

4

> been uncovered while he was alive. If [the taxpayer] were still living he would be liable for the civil fraud addition. Also, if the tax fraud were committed and a fraudulent return filed before the taxpayer's death but the fraud was not discovered until after his death, liability for a civil fraud addition imposed as a result of the taxpayer's tax evasion activities during his lifetime would survive his death and be borne by his estate.

*Kahr v. Comm'r of Internal Rev.*, 414 F.2d 621, 626 (2d Cir. 1969). A district court outside of this Circuit has applied *Kahr* to hold that FBAR liability accrues on the date the FBAR form is due, not on the date of the assessment. *See United States v. Park*, 389 F. Supp. 3d 561, 575 (N.D. Ill. 2019) (relying on *United States v. Drachenberg*, 623 F.3d 122, 125 (2d Cir. 2010) ("A tax deficiency arises by operation of law on the date a tax return is due but not filed; no formal demand or assessment is required.")). *Cf. Bedrosian v. United States*, 912 F.3d 144, 150-51 (3d Cir. 2018) (noting that the Bank Secrecy Act ("BSA"), which contains the provisions regarding FBAR violations, "was intended to promote, among other things, the collection of federal taxes" and is "part of the IRS's machinery for the collection of federal taxes" and should therefore be treated as a tax for purposes of determining when liability accrues).[3] The Court agrees with *Park*'s reasoning and finds that liability here accrued no later than June 30, 2011— approximately ten years before Benishai's death.

As to Defendants' second argument, this liability survives Benishai's death. "Whether a claim survives or is 'extinguished' upon the death of a party is determined by 'the nature of the cause of action for which the suit is brought.'" *U.S. ex rel. Colucci v. Beth Israel Med. Ctr.*, 603

---

[3] To the extent that Defendants attempt to distinguish cases on the basis that the BSA is not part of the Tax Code, the Court is persuaded by the Third Circuit's reasoning in *Bedrosian*, which held that "the FBAR statute is part of the IRS's machinery for the collection of federal taxes." 912 F.3d at 150-51 (finding that appellate jurisdiction outside the Federal Circuit existed under 28 U.S.C. § 1295(a)(2), which allows for jurisdiction over claims stemming from "an Act of Congress . . . providing for internal revenue"). This counsels in favor of treating the BSA and its provisions related to FBARs as akin to anti-fraud tax provisions, claims brought under which survive the death of the taxpayer. *See Kahr*, 414 F.2d at 626.

5

F. Supp. 2d 677, 680 (S.D.N.Y. 2009) (quoting *Ex parte Schreiber*, 110 U.S. 76, 80 (1884)). "Unless a statute directly addresses the issue, courts are generally guided by principles of federal common law, which prescribe that claims characterized as 'penal' abate upon a party's death, while claims characterized as 'remedial' survive." *Id.*

While the parties do not identify and the Court has not found binding case law with respect to the FBAR penalties at issue in this case, persuasive authority indicates that a claim for FBAR-related penalties is remedial, and therefore is not extinguished upon the death of the taxpayer. In *Kahr*, discussed above, the Second Circuit held that liability under anti-fraud provisions of the Tax Code survived the death of a taxpayer, in part because "[a] purpose" of these provisions "is to protect the tax revenue and to reimburse the Government for the public funds which must be expended in the investigation and uncovering of taxpayer tax evasion activities." 414 F.2d at 626. Therefore, "[a] need to reimburse the Government for its loss through fraud and for its expenditures in discovering and uncovering fraud survives the life of the discovered defrauder." *Id.* "*Kahr* has been cited by some of the few courts that have expressly addressed the question of whether the FBAR penalty survives the death of a party, all of which have held that the FBAR penalty is remedial." *United States v. Wolin*, 489 F. Supp. 3d 21, 27-29 (E.D.N.Y. 2020) (collecting cases and "sid[ing] with the predominant consensus that the FBAR penalty claim is remedial"); *see, e.g.*, *Park*, 389 F. Supp. 3d at 575 ("[T]he estate of a person who willfully fails to file an FBAR form during his lifetime cannot avoid the penalty that the person could not have avoided if he had lived."); *United States v. Schoenfeld*, 344 F. Supp. 3d 1354, 1375-76 (M.D. Fla. 2018) (holding that a claim for FBAR assessments survives the taxpayer's death, quoting *Kahr*). The Court agrees with these decisions and finds that the FBAR penalties are primarily remedial, and thus survive Benishai's death. *See United States v. Green*, 457 F. Supp. 3d 1262, 1272 (S.D. Fla. 2020) ("[T]he FBAR penalty is primarily remedial with

6

incidental penal effects. Accordingly, the FBAR penalties pursuant to § 5321(a)(5)(C) survive Marie's death.").

In sum, Benishai's liability for failing to file FBARs accrued no later than June 30, 2011, and this liability was not extinguished upon his death.

**B.      Statute of Limitations**

Next, the Government's assessments are timely. 31 U.S.C. § 5321(b) sets a six-year statute of limitations period for the Secretary of the Treasury to assess violations related to FBARs "beginning on the date of the transaction with respect to which the penalty is assessed." 31 U.S.C. § 5321(b)(1). Benishai (or someone exercising his power of attorney) entered into agreements with the Government to extend the statute of limitations on August 4, 2014, June 30, 2015, March 21, 2017, October 16, 2018, June 27, 2019, and October 30, 2020—the last of which extended the statute of limitations to June 30, 2021. *See* SMF ¶ 9. The IRS assessed the penalties in question on April 21, 2021. *See id.* ¶ 11. Defendants argue that (1) all of the assessments are untimely, because the Government lacks the ability to extend the statute of limitations by consent, and (2) alternatively, the assessments for 2004 through 2007 are untimely, because even if the Government can extend the statute of limitations by consent, it cannot do so after the statute of limitations has already run. *See* Defs.' Br. 8-13. Both of these arguments fail.

The parties do not identify binding case law on the permissibility of consent agreements to extend the statute of limitations, but the cases the Court has identified all hold or at least assume that such agreements are permissible. A string of district court decisions in the Eleventh Circuit has expressly held that such agreements are permissible. *See, e.g.*, *United States v. Lisenby*, No. 22 Civ. 4579, 2023 WL 11804580, at *7 (N.D. Ga. Aug. 11, 2023) ("[T]he statute of limitations can be extended by consent agreement even after its expiration."); *United States v.*

7

*Solomon*, 570 F. Supp. 3d 1195, 1200-02 (S.D. Fla. 2021) ("Because 31 U.S.C. § 5321 is not jurisdictional, the limitations period for assessing FBAR penalties may be waived by the parties, even for claims that have expired."); *United States v. Schwarzbaum*, No. 18 Civ. 81147, 2019 WL 3997132, at *4 (S.D. Fla. Aug. 23, 2019) ("Although Title 31 does not expressly authorize the extension of the applicable statute of limitations by agreement, it does not expressly prohibit such extensions.  Schwarzbaum has failed to point to any legal authority indicating that such extensions would be improper.").  And district courts in this Circuit have at least assumed that such agreements are permissible.  *See, e.g.*, *United States v. Reyes*, No. 21 Civ. 5578, 2024 WL 437096, at *1, *3 (E.D.N.Y. Jan. 10, 2024) (noting that the defendants had consented to extend the statute of limitations prior to its expiry and granting the Government's motion for summary judgment); *United States v. Daly*, No. 21 Civ. 990, 2022 WL 18215854, at *1 (W.D.N.Y. Oct. 4, 2022) (recommending default judgment in favor of the Government where the taxpayer consented to extend the statute of limitations after its expiry with respect to certain years in question), *adopted by* 2023 WL 146198 (W.D.N.Y. Jan. 10, 2023); *United States v. Sinyavskiy*, No. 21 Civ. 2757, 2022 WL 3588163, at *1 (E.D.N.Y. July 29, 2022) (same), *adopted by* 2022 WL 4662789 (E.D.N.Y. Sept. 30, 2022).  Defendants do not cite cases holding to the contrary, binding or otherwise.

Instead, Defendants rely on the fact that the BSA does not contain an explicit grant of authority to the IRS to extend the statute of limitations.  *See* Defs.' Br. 11.  But Defendants do not cite any authority for the proposition that the absence of such an express grant of authority to extend the statute of limitations amounts to a prohibition on doing so.  As noted above, other courts have held that parties may consent to extend the statute of limitations for FBAR penalties; and at least one court has expressly rejected Defendants' argument, noting that the statute "does not expressly prohibit such extensions." *Schwarzbaum*, 2019 WL 3997132, at *4.  Defendants'

8

argument is also unpersuasive because a statute of limitations, in this and in other contexts, is an affirmative defense that a defendant must raise, suggesting that a defendant may agree not to do so. *Cf. Chimblo v. Comm'r of Internal Rev.*, 177 F.3d 119, 125 (2d Cir. 1999) ("As a general matter, the statute of limitations is an affirmative defense that must be pleaded; it is not jurisdictional. It follows that such a defense may be waived by a party who fails to raise it at the appropriate time."); *see also Mulgrew v. U.S. Dep't of Transp.*, No. 24 Civ. 81, 2024 WL 665948, at *5 (E.D.N.Y. Feb. 17, 2024) (collecting cases). More generally, Defendants' argument that such an extension allows "the law to be disregarded and rendered null by the Secretary of the Treasury," Defs.' Br. 11, is unpersuasive because Benishai *agreed* to the extensions in question—which covered all of the years for which he incurred FBAR penalties. *See* SMF ¶ 9. Defendants do not substantively reckon with this fact or explain why Benishai should not be bound by the agreements into which he entered.

Because the Government issued the assessments in question prior to the expiry of the statute of limitations, as extended by Benishai in various agreements, the assessments are timely.

C.  **Constitutional Arguments**

Finally, Benishai's FBAR liability comports with the U.S. Constitution. In their opening brief, Defendants offer two constitutional arguments: (1) that an assessment on a person who has died violates the Fifth Amendment's Due Process Clause, because a deceased person by definition cannot have a meaningful opportunity for due process; and (2) that any such assessment violates the Eighth Amendment's Excessive Fines Clause, because "no amount of punitive fine assessed upon a deceased person [can] serve[] any legitimate purpose." Defs.' Br. 19-25. Both arguments fail.

Defendants' Due Process Clause argument is that, by definition, the Government cannot offer a meaningful opportunity for due process to a dead individual, prior to assessing FBAR

penalties on his or her estate. *See id.* at 19 ("Where an individual is dead prior to the assessment of the FBAR penalties it is *ipso facto* the case that the government cannot offer a meaningful opportunity for due process to that individual."). But Defendants cite no authority in support of this proposition. Their argument fails in light of the caselaw cited above which allowed for FBAR penalties to be assessed against an estate, notwithstanding the taxpayer's death. *See, e.g., Wolin*, 489 F. Supp. 3d at 27-29; *Park*, 389 F. Supp. 3d at 575; *Schoenfeld*, 344 F. Supp. 3d at 1375-76; *see also Kahr*, 414 F.2d at 626 ("Death may be an avenue of escape from many of the woes of life, but it is no escape from taxes."). It fails finally because Benishai's estate has been afforded due process through a full and fair opportunity to contest the FBAR penalties—as Defendants do now in connection with these cross-motions for summary judgment.

As for Defendants' Excessive Fines Clause argument, it proceeds as follows: (1) FBAR penalties are punitive, rather than remedial, making them subject to the Eighth Amendment's prohibition on excessive fines; and (2) a punitive fine levied on someone who is dead is always excessive in any amount. *See* Defs. Br. 25 (arguing "that there can be no amount of punitive fine assessed upon a deceased person that serves any legitimate purpose").[4] The First Circuit has considered this question, concluding that a civil FBAR penalty "is not a 'fine' and as such the Excessive Fines Clause of the Eighth Amendment does not apply to it." *United States v. Toth*, 33 F.4th 1, 19 (1st Cir. 2022), *cert. denied*, 143 S. Ct. 552 (2023), *reh'g denied*, 143 S. Ct. 2604 (2023). *But see* 143 S. Ct. at 553 (Gorsuch, J., dissenting) (opining that *Toth* "is difficult to reconcile with our precedents"). As noted, *supra*, courts have consistently characterized FBAR penalties as primarily remedial. And the Court finds the First Circuit's analysis of the Eighth Amendment question presented here to be persuasive.

---

[4] On March 28, 2024, the Institute of Justice filed a brief as *amicus curiae*, arguing that the Excessive Fines Clause applies to penalties for failure to file FBARs. *See* ECF No. 42.

In any event, however, it is unnecessary in this case to decide definitively the issue of the applicability of the Excessive Fines Clause, because even assuming *arguendo* that it does apply, Defendants' argument that *any* fine levied against an estate is *per se* excessive fails. Defendants cite no authority to support the proposition that death renders an otherwise permissible financial penalty excessive under the Eighth Amendment. And as discussed *supra*, courts have repeatedly upheld the imposition of FBAR penalties on taxpayers' estates. *See, e.g.*, *Wolin*, 489 F. Supp. 3d at 27-29; *Park*, 389 F. Supp. 3d at 575; *Schoenfeld*, 344 F. Supp. 3d at 1375-76. In light of these decisions, the Court declines Defendants' invitation to be the first court to hold that any FBAR penalties assessed against an estate are *per se* excessive.[5]

## CONCLUSION

For the reasons given above, the Government's motion for summary judgment is **GRANTED** and Defendants' motion for summary judgment is **DENIED**. The parties shall meet and confer and file a proposed form of judgment for so-ordering by **September 24, 2024**.

---

[5] Defendants do not challenge the *amount* of the FBAR penalties in this case as excessive under the Eighth Amendment. Given the breadth of their argument—that *any* FBAR penalties assessed against an estate are *per se* excessive, which the Court rejects—the Court does not engage in a detailed analysis applying the four factors set forth by the Supreme Court *United States v. Bajakajian*, 524 U.S. 321 (1998), for assessing whether a particular fine is proportional under the Eighth Amendment. *Cf. United States v. Certain Real Property & Premises Known as 38 Whalers Cove Dr., Bablyon, N.Y.*, 954 F.2d 29, 38 (2d Cir. 1992) ("The Eighth Amendment proscribes only extreme punishments. Even assuming that the entire amount of the forfeiture here is punishment, it does not violate the outer confines set by the Eighth Amendment."); *see also Francis v. Fiacco*, 942 F.3d 126, 140 (2d Cir. 2019) (noting "standard principles of constitutional avoidance" and the risk of "substantial expenditure of scarce judicial resources on difficult questions that have no effect on the outcome of the case" counsel in favor of resolving questions of qualified immunity prior to reaching difficult constitutional questions).

In any event, the Court notes that district courts in this Circuit have upheld the imposition of FBAR penalties much larger than the $70,000 in penalties in this case against Excessive Fines Clause challenges. *See, e.g.*, *United States v. Garrity*, No. 15 Civ. 243, 2019 WL 1004584, at *6-9 (D. Conn. Feb. 28, 2019) (rejecting Excessive Fines Clause challenge for penalties for a willful failure to file an FBAR of $936,691, plus interest and late payment penalties).

12

      The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 25, 29, and 30.

      SO ORDERED.

Dated: September 17, 2024
       New York, New York

_____
DALE E. HO
United States District Judge
